UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES,<br><br>    Plaintiff,<br><br>vs.<br><br>GLENN ALLEN WARE,<br><br>    Defendant. | Case No. 3:15-cr-00096-RCJ-WGC<br><br>**ORDER** |

Defendant renews a motion for compassionate release based on his fear of contracting COVID-19. The Court previously denied this motion for failing to present an extraordinary and compelling basis for relief. For the reasons stated herein, the Court denies this motion.

**FACTUAL BACKGROUND**

On April 4, 2011, a Nevada state court sentenced Defendant to twelve to thirty-six months' imprisonment for three counts of Possession of Visual Presentation Depicting Sexual Conduct of a Person Under 16 Years of Age in violation of NRS 200.730. (Presentence Rep. ¶ 44). Defendant pleaded guilty to these crimes after police found hundreds of images of graphic child pornography involving children as young as infants engaged sexual acts on Defendant's computer. (*Id.*) Police discovered Defendant's by identifying his internet protocol ("IP") address, while he engaged in

posting and sharing child pornography on the file-sharing website "Ning." (*Id.*) Defendant was paroled on April 18, 2012 and attended mandatory "sex-offender specific" counseling services upon his release. (*Id.* ¶¶ 44, 55).

Despite these convictions and the State's efforts to rehabilitate Defendant, police again found Defendant committing a similar crime in October 2015. (*Id.* at 3–4). Defendant parked his car in a restaurant parking lot and used the restaurant's public Wi-Fi to hide his laptop's IP address. (*Id.*) Police observed Defendant engaging in these acts in the parking lot, and upon examination of the computer, over 10,000 child pornography images and videos were located on the laptop. (*Id.*) Defendant pleaded guilty to one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and 18 U.S.C. § 2252(b)(1). (ECF No. 37.) The Court sentenced Defendant to 120 months' imprisonment. (ECF No. 52.)

He is currently incarcerated in FCI Lompoc with a projected release date of April 19, 2024. *Find an inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited on Dec. 9, 2020). The COVID-19 epidemic ravaged this facility. *See, e.g.*, Richard Winton, *70% of Inmates Test Positive for Coronavirus at Lompoc Federal Prison, L.A. Times* (May 9, 2020), https://www.latimes.com/california/story/2020-05-09/coronavirus-cases-lompoc-federal-prison-inmates. However, only nine inmates and one staff member have confirmed, active cases as of December 9, 2020. *COVID-19 Coronavirus: COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Dec. 9, 2020). During the course of the epidemic of the facility, Defendant tested positive of COVID-19 on May 4, 2020 and had residual effects from the illness as late as July 17, 2020. (ECF No. 80 at 8.)[1]

---

[1] Defendant submitted his medical history, (ECF No. 80), as a single filing without page numbers. To avoid confusion, citations to this document refer to the page numbers located in the docket stamp at the top of the page. Defendant also moves to seal these medical records. (ECF No. 79.) The Court grants this request.

In his previous motion for compassionate release, Defendant pointed to his age and medical conditions. At the time, he had recently turned seventy-one years old. He claimed that he is prediabetic and has a serious heart condition, a first-degree AV Block. From these conditions, he further concludes he is at a high risk of becoming severely ill from COVID-19. The CDC has indicated that people over sixty-five years old and people with certain heart conditions or diabetes have a higher risk of becoming severely ill from COVID-19. *Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, Ctr. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited Dec. 9, 2020). This list does not, however, explicitly include persons with a first-degree AV block or those with prediabetes. *Id.*

Defendant claims that since the filing of his previous motion his medical conditions have worsened. On September 4, 2020, he claims that he had a "heart attack at 2:30 AM." (ECF No. 80 at 31.) His medical records indicate that an EKG that was performed on him that day merely confirm his first degree heart block and that the EKG was "borderline," but the records make no mention of a heart attack. (*Id.* at 2–3.) In addition to the claimed worsening of his heart condition, Plaintiff also raises his diagnosis of hyperlipidemia. (*Id.* at 3.) The CDC does not include hyperlipidemia as a condition that increases one's risk of severe illness from COVID-19 or even one that might do so. *Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, Ctr. for Disease Control and Prevention.

In his renewed motion, Defendant did not attach evidence that shows he had presented these new bases for compassionate release to his warden. The Government argued therefore that the motion was not properly exhausted. In his reply, Defendant attaches an "Inmate Request" dated July 3, 2020, where Defendant seeks a "renewed emergency motion for Compassionate Release."

///

Defendant relies on his unspecified "medical conditions," the amount of his sentence that he has served, his alleged low risk to society, and that he has previously tested positive for COVID-19.

## LEGAL STANDARD

A district court may not generally "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to this rule is that a court may grant a reduction to a term of imprisonment "(and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)" based on "extraordinary and compelling reasons." § 3582(c)(1)(A). Congress delegated the sole authority to determine what constitutes extraordinary and compelling to the Sentencing Commission. 28 U.S.C. § 994(a)(2)(C) (requiring the Commission to promulgate policy statements for § 3582(c)); *id.* § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction . . . ."); *see Dillon v. United States*, 560 U.S. 817, 820 (2010) (holding that the Commission's policy statements are binding). Before granting such relief, the court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable" and find that "a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

Either the Director or a defendant may bring a motion under § 3582(c)(1)(A). A court, however, may not consider a motion brought by a defendant unless he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

## ANALYSIS

Defendant argues his possible re-exposure to COVID-19 while incarcerated is an extraordinary and compelling reason for his release. Assuming, *arguendo*, Defendant properly

exhausted his claim, the Court still finds that Defendant has not presented an extraordinary and compelling reason for relief, Defendant is a danger to society, and the § 3553(a) factors do not favor a reduction. The Court therefore denies this motion.

As the Court previously ruled in this case, U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1B1.13 (U.S. Sentencing Comm'n 2018) "is applicable, binding, and provides the exclusive list of extraordinary and compelling reasons that may justify compassionate release unless and until Congress, the Commission, or the Director provide for additional bases." (ECF No. 72 at 7.) According to this provision, extraordinary and compelling bases for compassionate relief only include the following,

1. The defendant is suffering from a terminal illness . . . . [Or] [t]he defendant is suffering from a serious physical or medical condition, suffering from a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health because of the aging process that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
2. The defendant is at least 65 years old[,] is experiencing a serious deterioration in physical or mental health because of the aging process[,] and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
3. The death or incapacitation of the caregiver of the defendant's minor child or minor children[,] [or] [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
4. *As determined by the Director of the Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, [those described above].

§ 1B1.13 cmt. n.1(A)–(D) (emphasis added).

The Court concluded that Defendant has not satisfied any of these bases. (ECF No. 72 at 7.) Defendant does not attempt to argue that his alleged worsened condition now satisfies one of the bases identified by this provision but attempts to relitigate whether the provision is binding based on the fact that the Second, Fourth, Sixth, and Seventh Circuits have disagreed with this Court's prior conclusion. *United States v. McCoy*, Nos. 20-6821, 20-6869, 20-6875, 20-6877, 2020

WL 7050097, at *6-7 (4th Cir. Dec. 2, 2020); *United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *8-9 (6th Cir. Nov. 20, 2020); *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *2 (7th Cir. Nov. 20, 2020); *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). According to Defendant, since § 1B1.13 is not applicable, this Court has "broad discretion to determine what are extraordinary and compelling reasons warranting a reduction in sentence under 3582(c)(1)(A)." (ECF No. 86 at 2.)

Assuming, *arguendo*, Defendant is correct that this Court is allotted broad discretion in finding extraordinary and compelling reasons for § 3582(c)(1)(A) motions,[2] the Court does not find that Defendant's current age and medical conditions are extraordinary and compelling even in light of the COVID-19 pandemic. Even if Defendant were to contract COVID-19 again, it is unlikely that Defendant would die from the illness. The CDC estimates that all people aged 70–79 have a 94.6% chance of surviving COVID-19. *COVID-19 Pandemic Planning Scenarios*, Ctr. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html (last visited Dec. 9, 2020). As Defendant is on the younger side of this age group and this figure includes those with identified risk factors to COVID-19, Defendant's odds of surviving COVID-19 are higher. Indeed, Defendant already contracted COVID-19 and did not become severely ill; his medical records indicate that he was initially asymptomatic. (ECF No. 80 at 11.)

Turning to danger to the community, the Court is not convinced that Defendant would not return to child pornography. Defendant has committed this crime multiple times despite a previous felony conviction and mandatory therapy to address Defendant's addiction. Not only did

---

[2] The Court is not persuaded by these new cases. While these courts have disagreed with this Court's conclusion, they did so based on the arguments that this Court already considered and rejected, and other courts continue to agree with this Court. *See, e.g.*, *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *4 (S.D. Tex. Aug. 19, 2020) ("Having considered both lines of cases, the Court adopts the Baye Court's holding . . . .").

Defendant repeat the offense, but he became more sophisticated in viewing and sharing of child pornography by attempting to hide his activities by using a public Wi-Fi. The Court therefore finds that Defendant is a danger to society.

Finally, the Court also disagrees with Defendant that a reduction of more than four years of his ten year sentence would meet the factors of § 3553(a). For this argument, Defendant points to Mr. Ware's prior service in the United States Air Force and his family and community support. (ECF No. 78 at 15.) The Court already considered these factors when imposing a sentence of 120 months' imprisonment downwardly departing from the guidelines range of 135–168 months' imprisonment. (ECF No. 60 at 20.) Reducing Defendant's sentence by more than four years would fail to reflect the seriousness of this crime.

In sum, the Court finds that Defendant has not presented an extraordinary and compelling reason for compassionate release, is a danger to society, and compassionate release would not satisfy the factors of § 3553(a). Based on these findings, the Court denies Defendant's motion.

**CONCLUSION**

IT IS HEREBY ORDERED that Defendant's Emergency Motion for Compassionate Release (ECF No. 78) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion for Leave to File Exhibit Under Seal (ECF No. 79) is GRANTED.

IT IS SO ORDERED.

Dated December 10, 2020.

_____
ROBERT C. JONES
United States District Judge